# Commonwealth, for use, etc. *versus* Walter.

1. A sheriff cannot relieve himself from liability for the proper distribution of the proceeds of real estate sold by him under an execution, in any other manner than by paying the said proceeds into court.

2. The mere payment by him of said proceeds to the prothonotary of the court, without the intervention and knowledge of the court itself, is not such a payment into court as will relieve him from liability.

3. Where a sheriff desires to pay money into court, the proper course is for him to appear, either in person or by attorney, and obtain the leave of the court to pay the money. He may then deliver it to the prothonotary as the officer and representative of the court, acting under its authority, subject to special or standing orders in regard to the safe custody and ultimate disbursement of the fund.

November 15th 1881. Before SHARSWOOD, C. J., MERCUR, GORDON, PAXSON, TRUNKEY, STERRETT and GREEN, JJ.

Error to the Court of Common Pleas of *Butler county:* Of October and November Term 1881, No. 262.

Debt on the official bond of George Walter, sheriff of Butler county, by the Commonwealth, for use of the Oil City Savings Bank, against George Walter, sheriff, and Jacob Keck and others, sureties on the said bond.

[Commonwealth for use *v.* Walter.]

Upon the trial, before McJunkin, P. J., the jury, under the instructions of the court, found a special verdict, setting forth the following facts:—On July 10th 1877, sheriff Walter received a writ of testatum fi. fa., directed to him, issued out of the Court of Common Pleas of Venango county, upon a judgment there obtained by Reynolds, Lamberton & Co., against R. Chisholm. By virtue of said writ, Sheriff Walter levied on certain real estate belonging to Chisholm and subsequently sold the same for the sum of $500. He acknowledged the deed in the Court of Common Pleas of Butler county. On October 16th 1877 he returned the said writ into the Common Pleas of Venango county, and on the same day he paid to the prothonotary of the said Court of Common Pleas of Venango county the said sum of $500, less his costs. On the same day the said prothonotary paid over the said money to the attorney of the plaintiff in the writ of testatum fi. fa.

Sheriff Walter had no actual notice of the existence of any other lien on said fund in Butler county. The records of Butler county showed, however, that the Oil City Savings Bank had obtained a judgment in said county June 1st 1874 against the said R. Chisholm, which judgment was a first lien on the real estate sold under the said testatum fi. fa.

Under the above facts, the jury found a verdict in favor of the Commonwealth for the penal sum or amount of the bond, $8,000, and in favor of the Oil City Savings Bank for $428.65 damages; subject to the opinion of the court upon the question reserved, viz.: "Whether or not the payment by the sheriff of the proceeds of said sale to the prothonotary of Venango county, was, under the facts in the case, a good payment, and a protection to him and his sureties from liability in this action."

The court, subsequently, after argument, entered judgment or the reserved question for the defendants, non obstante veredicto. The plaintiff thereupon took this writ of error, assigning for error the entry of said judgment.

*F. W. Hays* (*J. D. McJunkin* with him), for the plaintiff in error.—The voluntary payment by the sheriff to the prothonotary of Venango county is no protection to the sheriff in this action. Where a sheriff makes a sale of real estate under a testatum writ of execution, he may elect to acknowledge his deed, and pay the fund for distribution, either in the court of the situs, or in the court whence the testatum writ issued: Borlin's Appeal, 9 W. N. C. 545. Here the sheriff acknowledged the deed in the court of the situs, viz., Butler county, but he did not pay the fund either into that court or into the court of Venango county. Payment to the prothonotary, without more,

is not payment into court. It was in effect a distribution by the sheriff to the plaintiffs in the testatum fi. fa., through the hands of the prothonotary of Venango county. In such case, as in all other cases of the distribution of the proceeds of a sheriff's sale of real estate by the sheriff, it is on his own responsibility. He may undertake to distribute the fund, but if he does, he is bound to apply it to existing liens of record in their order of priority: Mather v. McMichael, 1 Harris 302; Luce v. Snively, 4 Watts 399; In re Bastian, 9 Norris 476; Franklin Twp. v. Osler, 10 Norris 163.

*C. Walker* (*F. M. Eastman* with him), for the defendant in error.—The command of the testatum fi. fa. required the sheriff to return the writ, with the money, " before the judges of the Court of Common Pleas of Venango county." He complied with this command by returning the writ and paying the money to the prothonotary of that court, in his official capacity as depositary of the court. The sheriff thereby discharged himself of all liability; and the said prothonotary and the sureties on his bond thenceforth became responsible for its application: Deckert's Appeal, 5 W. & S. 344; McDonald v. Todd, 1 Grant 18. The sheriff, in paying the money to the prothonotary, followed the universal practice in this state in writs of testatum execution, and it would be inequitable to hold him personally liable to one who failed to notify him of his claim.

Mr. Justice STERRETT delivered the opinion of the court, January 2d 1882.

After the defendant Walter, as sheriff of Butler county, acknowledged and delivered his deed to the purchaser for the land sold on the testatum fieri facias, and received the purchase money therefor, he had an undoubted right to pay the same either into the proper court of his own county or into the court of common pleas of Venango county, whence the writ issued: Borlin's Appeal, 28 P'g. L. J. 412. By so doing, he would have avoided all risk. It would then have been the duty of the court into which the money was paid, to distribute the same to the parties entitled thereto. In no other way could the sheriff relieve himself from responsibility. He had the right to distribute it himself; but, if he undertook to do so, he incurred the risk of misapplication and consequent liability on his official bond: Luce v. Snively, 4 Watts 396; In re Bastian, 9 Norris 472; Franklin Township v. Osler, 10 Norris 160. Instead of paying to the party entitled, or into either court, the sheriff returned the writ and paid the money to the prothonotary of Venango county, who in turn paid it to the plaintiff in the testatum, to the prejudice of the Oil City Savings Bank, which

[Commonwealth for use *v.* Walter.]

had the first lien on the land out of which the fund was realized. This was all done without the intervention or even the knowledge of either the court of the situs, or the court whence the writ issued.   In no proper sense of the term can this be considered a payment of the money into the Court of Common Pleas of Venango county.   To sanction such a practice would be productive of great mischief.   If the sheriff has money, which, in obedience to the command of his writ, he wishes to bring into court, it is his duty to have the matter brought to the attention of the court, so that it may be fully advised, and take such action as may be proper in regard to the distribution of the money and its safe keeping in the meantime.   The recognized and proper practice in such cases is for the sheriff or his deputy to appear in person or by attorney, and, by leave of court first obtained, pay in the money.   This being done, the prothonotary, as the officer and representative of the court, acting under its authority, takes charge of the fund subject to the special or standing orders of court in regard to its safe custody and ultimate disbursement.   This is the only way in which money made on execution process can regularly go into the hands of the prothonotary.   His authority to receive and receipt for money in any other way is quite restricted.   In Watson *v.* Smith, 2 Casey 395, it was held that as a matter of public convenience, sanctioned by an almost universal practice, a suitor may lawfully pay, to the prothonotary, fees due to a former incumbent of the office; and as a necessary consequence his sureties are liable therefor.   But, the prothonotary has no power to receive payment of a judgment, and he who makes such payment does so in his own wrong: Tompkins *v.* Woodford, 1 Barr 156.   And, in Wells *v.* Baird, 3 Barr 351, it was held that money paid to the prothonotary and entered by him, on his docket, as paid into court, will not affect the right of the plaintiff to have the judgment revived.

There appears to be no question as to the bona fides of the sheriff in this case, and it is to be regretted that he and his sureties must be adjudged liable, as for a misapplication of the money; but it is the inevitable result of his failure to relieve himself of responsibility in either of the modes recognized by law.

> Judgment reversed, and judgment is now entered on the verdict against the defendants, in favor of the Commonwealth for $8,000, penalty of the bond, and in favor of the Oil City Savings Bank, $428.35 damages.